UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

CHRISTOPHER KING,
    Plaintiff,

v.                                                           C.A. No. 1:10-cv-501-JJM

FRIENDS OF KELLY AYOTTE, et al.,
    Defendants.

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

This matter arises out of political activities surrounding the 2010 federal elections in New Hampshire. Plaintiff Christopher King brings claims based on his curtailed attempts to attend four political events held on private property during the 2010 election season. Mr. King's Second Amended Complaint (the "Complaint") alleges violations of the First and Fourteenth Amendments, as well as federal civil rights statutes, and it contains state common law claims. (ECF No. 73.)[1] Mr. King seeks injunctive and declaratory relief, in addition to compensatory and punitive damages. Motions to Dismiss filed by all defendants are before the Court. (ECF Nos. 78, 79, 80, 83.) Mr. King has objected to those motions. (ECF Nos. 85, 86, 87, 88.)

### I. PARTIES

Plaintiff Christopher King is a law school graduate. Mr. King has worked as a reporter for an Indianapolis publication and as an editor for an Ohio publication. Mr. King has participated in press gatherings at political events. With a presence on various websites, some

---

[1] Mr. King's Motion for Leave to File Third Amended Complaint (ECF No. 103) was denied without prejudice upon the Court's July 14, 2011 Order granting Defendants' Joint Motion to Stay. Mr. King's Motion for Leave to Amend sought to add allegations of fact that occurred after the filing of his Second Amended Complaint. Nothing in the proposed Third Amended Complaint would alter the outcome of the Court's ruling on the instant motions.

that he owns and maintains, Mr. King is an observer of and commentator on political and current affairs. Mr. King has taken a special interest in the First Amendment and United States Senator Kelly Ayotte.[2]

Mr. King asserts claims against eleven defendants. Because their arguments and positions are aligned, the Court divides the eleven defendants into two groups, the "Political Defendants" and the "Nashua Defendants." The Political Defendants are U.S. Senator Kelly Ayotte; the Friends of Kelly Ayotte, Inc.; the New Hampshire Republican State Committee; the Nashua Republican City Committee; Ryan Williams (New Hampshire Republican State Committee Communications Director); Dennis Hogan (Chair of the Nashua Republican City Committee); and Di Lothrop (Nashua Republican City Committee Communications Director). The Nashua Defendants are comprised of the Nashua Police Department; Nashua Police Chief Donald Conley;[3] Nashua Police Lieutenant John Fisher;[4] and Nashua Police Officer James Hargreaves.

In the Complaint, Mr. King alleges that as a journalist, he was entitled to attend and report on four publicly advertised political events. While acknowledging that these events were held on private property, he argues that the venues, subject to state licensing or permitting, should be considered places of public accommodation. Mr. King further argues that because the general public was invited, he too was entitled to attend. Moreover, he contends that his activities at these events were restricted because he is African-American. In support of this final

---

[2] *See* http://christopher-king.blogspot.com (last visited May 14, 2012); and http://kellyayottesenate.blogspot.com (last visited May 14, 2012).
[3] The Court will refer to the Police Chief as Donald Conley, even though he was named Dan Conley and Dan Donley in the Complaint. Chief Conley retired in November, 2011.
[4] Lt. Fisher is no longer with the Nashua Police Department. In September, 2011 he became police chief in Carlisle, Massachusetts.

assertion, Mr. King points to the fact that while other non-African-American journalists were allowed to attend events, certain defendants prevented his attendance or restricted his reporting.

## II. FACTS[5]

During the 2010 campaign season, Mr. King appeared at political events sponsored by state and local Republican committees and by then U.S. Senate candidate Kelly Ayotte. Mr. King alleges that defendants violated his rights at the following four events: a "Facebook Rally;" a "Steak Out Rally;" a "GOP Rally;" and an "Election Eve Rally."

The "Facebook Rally" was held on August 29, 2010 in a parking lot on private property in Manchester, New Hampshire. Advertised through Facebook, the event was organized to support U.S. Senate candidate Kelly Ayotte. Although he offered to pay to attend the event, certain Political Defendants agreed "in conspiratorial alliance" to have Mr. King removed "because he represents a strident black man looking for answers and questioning Ms. Ayotte about sensitive issues." (ECF No. 73-3 at 4.)

The "Steak Out Rally" was held on September 12, 2010 at the Crowne Plaza Hotel in Nashua, New Hampshire. The Nashua Republican City Committee event featured Arizona Sheriff Joe Arpaio. Although there was an admission fee to attend, the event was otherwise open to the public. Mr. King interviewed Sheriff Arpaio at the Crowne Plaza without incident. When other media members attempted to ask Ms. Ayotte questions, a Nashua GOP secretary "spoke out of turn and struck" Mr. King's camera with a flier. (ECF No. 73-1 at 3.) Nashua police officers "stood by and did nothing." *Id.* Defendant Nashua Police Officer James Hargreaves then told Mr. King he needed a ticket to attend the event. When Mr. King offered to purchase a ticket as either a member of the press or the public, Officer Hargreaves directed him to the media

---

[5] The facts recited herein are as alleged by Mr. King in the Complaint and assumed to be true for purposes of deciding the pending motions to dismiss.

3

area. Defendant Ryan Williams then "cornered" Mr. King and informed him that "he was not a member of the press." *Id.* Mr. Williams and defendant Di Lothrop then ordered Nashua Police Officers to remove Mr. King from the Crowne Plaza under threat of arrest. Mr. King left as a result of the threat.

The "GOP Rally," featuring U.S. Senator John McCain, was held at V.F.W. Post 483 in Nashua, New Hampshire on October 2, 2010. This event was publically advertised, but asked those planning to attend to respond as such. Mr. King responded that he would attend. Defendant Nashua Police Lt. John Fisher greeted Mr. King upon his arrival and told him that he was to stay outside on the sidewalk. Lt. Fisher "spoke out of turn" as Mr. King attempted to question defendant Ms. Ayotte while a nearby car was backing up. (ECF No. 73-1 at 6.) Lt. Fisher "admonished" Mr. King "on the backing car," even though "white people" were "closer to the car." *Id.* Lt. Fisher cautioned Mr. King to stay on the sidewalk. *Id.*

An "Election Eve Rally" was held on November 1, 2010 at Popovers Coffeehouse in Portsmouth, New Hampshire. While Mr. King was allowed into the coffeehouse, an individual identified with Ms. Ayotte's Senate campaign interfered with his ability to gather news by "continually" talking to him "while he was attempting to run video." (ECF No. 73-2 at 2.)

### III.   STANDARD OF REVIEW

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008); *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006). To withstand "a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

127 S.Ct. 1955, 1967-69 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-87 (2009). "[A] plaintiff . . . is . . . required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

Moreover, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While accepting the facts as alleged in the complaint as true, "this deferential standard does not force [a] court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

Because Mr. King is pro se, the Court views his pleadings liberally. The Court is "solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, [the Court] hold[s] pro se pleadings to less demanding standards than those drafted by lawyers and endeavor[s], within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158-59 (1st Cir. 2008) (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000)).

IV. ANALYSIS

Mr. King's Complaint contains seven causes of action. The first three involve federal statutes. Count I is brought pursuant to 42 U.S.C. § 1983 and alleges violations of the First and

Fourteenth Amendments to the United States and New Hampshire constitutions. Mr. King also alleges in Count I unlawful prior restraint, unlawful viewpoint-based discrimination, and unlawful content-based discrimination. Count II is brought pursuant to 42 U.S.C. § 1981 and alleges racial discrimination in contract. Count III is brought pursuant to 42 U.S.C. § 1985 and alleges a conspiracy.

Count IV is brought pursuant to New Hampshire Rev. Stat. Ann. § 354-A:16, Equal Access to Public Accommodations. At the motions to dismiss hearing, Mr. King affirmed that he was no longer pressing Count IV. As such, Count IV is DISMISSED.

The final three counts are common law state claims: Count V is a common law assault claim; Count VI is a common law intentional infliction of emotional distress claim; and Count VII is a common law negligence claim. As explained below, the Court will exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c)(3).[6]

### A. First Amendment Rights Under 42 U.S.C. § 1983 (Count I)

In his first cause of action, Mr. King claims that defendants' actions violated his First and Fourteenth Amendment rights and represented an "unlawful prior restraint," "unlawful viewpoint–based discrimination," and "unlawful content-based discrimination." (ECF No. 73-3 at 3.) Specifically, Mr. King alleges that defendants violated his First Amendment rights to attend political events and to cover those events as a journalist. In addition, as to the Nashua Defendants only, Mr. King further alleges that they violated 42 U.S.C. § 1983 by "interfere[ing]

---

[6] As noted above, the Court's ruling on the pending motions would be the same if those motions were pressed against the proposed Third Amended Complaint, making futile Mr. King's Motion for Leave to File Third Amended Complaint. While the Court is mindful that Mr. King might again seek leave to file another amended complaint, Mr. King has shown a "repeated failure to cure deficiencies by amendments previously allowed." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 56 (1st Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). At this stage, permitting further amendment and the concomitant delay would be unduly prejudicial to defendants. *Id.* (quoting *Foman*, 371 U.S. at 182).

with a reporter who [was] not violating any orders," and "push[ing] a reporter all the way out of a place of public accommodation either as a reporter or as a male, black." *Id.*

### 1. Political Defendants

"[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976). "[T]he Constitution provides no redress when private parties abridge the free expression of others." *Kay v. New Hampshire Democratic Party*, 821 F.2d 31, 33 (1st Cir. 1987). Because the Political Defendants are private parties whose activities took place on private property, their actions generally are not subject to the First Amendment. Private parties are largely unrestrained by the constitution or laws from abridging another's freedom of speech, press, religion, or assembly. Generally, only governmental actions are subject to such limitations.

Moreover, the private parties about whom Mr. King complains are themselves entitled to certain First Amendment constitutional protections. Political parties have protection from the government's infringement of their own First Amendment freedoms. Any action by this Court, or by state or local government, to force political parties or candidates to admit individuals to their events under these circumstances may run afoul of those political parties' rights to free assembly and association. *See, e.g., Kay*, 821 F.2d at 33 (citing *Democratic Party of the United States v. Wisconsin*, 450 U.S. 107, 122 (1981)).

While this is the general rule, the First Circuit has set forth three ways that private entities can be considered state actors for purposes of § 1983 liability and constitutional infringement. "A private party may become a state actor if he assumes a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has 'so far insinuated itself into a position of

interdependence with the [private party] that it was a joint participant in [the challenged activity].'" *Santiago v. Puerto Rico*, 655 F.3d 61, 68-69 (1st Cir. 2011) (quoting *Estades–Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005) (alterations in original)); *see also Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*, 522 F.3d 1, 4 (1st Cir. 2008).

Mr. King sets forth no allegations in his Complaint satisfying any of these three exceptions to the general rule. He does not plausibly allege that any of the defendants assumed a traditional public function, acted upon coercion or encouragement by the state, or became interdependent with the government such that it was a joint participant. Furthermore, when private actors rent private facilities, even for public political purposes, neither the venues nor the functions are converted into public forums for purposes of the First Amendment. *See Kay v. Bruno*, 605 F. Supp. 767, 772 (D.N.H. 1985). Finally, Political Defendants' use of municipal police officials to enforce their rights does not convert their private actions into state conduct. *See Cape Cod Nursing Home Council v. Rambling Rose Rest Home*, 667 F.2d 238, 243 (1st Cir. 1981) (finding that where plaintiffs were not rightfully on the property, "the police action in removing [the plaintiffs] could not in itself create such a right where none existed before").

Therefore, the Political Defendants' Motions to Dismiss Count I are GRANTED.

### 2. Nashua Defendants

Mr. King alleges that the Nashua Defendants unconstitutionally interfered with him in his role as a reporter by making him leave the "Steak Out Rally" and the "GOP Rally" and by interfering with his right to gather news there in violation of the First Amendment and 42 U.S.C. § 1983. Section 1983 imposes liability on a person who, under color of any state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Municipalities and other local governmental units are included among those persons to whom § 1983 applies. *Monell v. Dep't of Social Serv. of New York*, 436 U.S. 658, 690 (1978). Because the Nashua Defendants are state actors for purposes of § 1983 liability, their alleged violations of Mr. King's constitutional rights may be actionable.

First, as previously noted, the First Amendment does not prevent those making use of private property from restricting speech on that property. *See Hudgens v. NLRB*, 424 U.S. 507, 513-21 (1976) (involving a private shopping mall).[7] Mr. King had no constitutional right to attend either the "Steak Out Rally" at the Crowne Plaza Hotel or the "GOP Rally" at the V.F.W. Post. Both events were held on private property. The fact that a political party or candidate sponsored the event does not provide Mr. King with a protected right to enter such property to engage in constitutionally protected speech.

Second, as to defendant Nashua Police Department, a municipality and its departments cannot be sued under a theory of vicarious liability for its agents' actions. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997). To hold a municipality liable pursuant to § 1983, a plaintiff must establish that "through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011) (quoting *Brown*, 520 U.S. at 404) (internal quotation marks omitted). A plaintiff must also "identify a municipal policy or custom that caused the plaintiff's injury." *Id.* (quoting *Brown*, 520 U.S. at 403) (internal quotation marks omitted).

---

[7] Mr. King relies on the holding of the U.S. District Court for the District of Maryland in *NAACP, Frederick City Chapter v. Thompson*, 648 F. Supp. 195, 225 (D. Md. 1986). That case involved a county-issued permit system used to exclude certain members of the public based on race. The active state involvement critical in *Thompson* simply does not exist here.

9

Mr. King has failed to allege that the Nashua Police Department had policies, customs or practices that caused his alleged injuries. Nowhere in the Complaint is it alleged that the Nashua Police Department pursued policies or practices of First Amendment violations, racial discrimination, or interference with freedom of the press. Moreover, Mr. King does not allege that the Nashua Police Department engaged in deliberate conduct such that it was a "moving force" behind the constitutional violations that Mr. King alleges. Absent factual allegations of such systemic behavior by the Nashua Police Department, Mr. King's claims fail.

Moving on to the individual police officers' alleged violations, Mr. King must demonstrate that the conduct complained of was (i) committed by a person acting under color of state law and (ii) deprived him of a constitutional or federal statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Mr. King's allegations against these individuals fall far short of stating claims for violations of the First Amendment under § 1983. At the "Steak Out Rally," the conduct alleged is limited to defendant Officer Hargreaves directing Mr. King to go to the press area, and, at defendant Ryan Williams' request, instructing Mr. King to leave, which Mr. King did as he "felt compelled to leave or be arrested." (ECF No. 73-1 at 3-4.) At the "GOP Rally," Mr. King alleges that defendant Lt. Fisher met him upon his arrival and told him, on orders from Ms. Ayotte's campaign, that he was not to enter the property and he was to stay on the sidewalk. (ECF No. 73-1 at 5.) Later, Lt. Fisher warned Mr. King about a car backing up and cautioned him to remain on the sidewalk. *Id.* at 6. These facts, even when read in the light most favorable to Mr. King, do not support his claims that these defendants violated his constitutional rights.

Furthermore, the individual police officers' actions in enforcing private property rights do not violate Mr. King's constitutional rights. *See Kay v. New Hampshire Democratic Party*, 821 F.2d 31, 34 (1st Cir. 1987). The police officers were enforcing the rights of the parties who

controlled the private property. The sponsors of both events on private property wanted Mr. King to leave. When he refused, it was appropriate for the police officers to assist in enforcing the sponsors' private property rights. *See Cape Cod Nursing Home Council v. Rambling Rest Home*, 667 F.2d 238, 243 (1st Cir. 1981) ("Since the plaintiff [] had no right to be [at the event], the police action in removing [him] could not in itself create such a right where none existed before.").[8]

Finally, the Court discounts Mr. King's argument that he should be afforded special privileges because he is a journalist. Because these events took place on private property Mr. King's, or any journalist's, First Amendment rights were not implicated. *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally.").

In light of the above, the Nashua Defendants' Motions to Dismiss Count I are GRANTED.

### B.   Racial Discrimination In Contracts Under 42 U.S.C. § 1981  (Count II)

In his second cause of action, Mr. King alleges that defendants violated his right as an African-American to enter contracts without being subject to racial discrimination under 42 U.S.C. § 1981 at three of the political events.[9] At the "Facebook Rally," Mr. King alleges that defendants conspired to prevent him from questioning U.S. Senate candidate Ayotte because he appears as a "strident black man." (ECF No. 73-3 at 4.) He claims they refused to allow him to

---

[8] Although the Court need not reach the issue, qualified immunity provides an additional reason for dismissal of the claims against the individual police officers. *See, e.g., Dirrane v. Brookline Police Dept.*, 315 F.3d 65 (1st Cir. 2002) (affirming district court's finding that police officers were protected by the doctrine of qualified immunity).

[9] 42 U.S.C. § 1981(a) states in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

11

pay money to attend and then ejected him from the event. *Id.* He makes similar claims arising from his attempts to attend the "Steak Out Rally," *id.*, and the "GOP Rally." (ECF No. 73-4 at 2.) He claims that the RSVP for the "GOP Rally" established a contract and that he was barred from making that contract and attending the rallies because of his race, in violation of 42 U.S.C. § 1981. *Id.*

The Civil Rights Act of 1866, codified at 42 U.S.C. § 1981, was a major piece of Reconstruction legislation that prohibited "racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Unlike the § 1983 claims discussed above, § 1981 "reaches purely private acts of racial discrimination." *Id.* at 170 (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968) ("[the 1866] Act was designed to do just what its terms suggest: to prohibit all racial discrimination, whether or not under color of law, with respect to the rights enumerated therein . . .")). The *Jones* court explained that the "right to 'make and enforce contracts' is violated if a private offeror refuses to extend to a Negro, solely because he is a Negro, the same opportunity to enter into contracts as he extends to a white offerees." *Runyon*, 427 U.S. at 170-71 (quoting *Jones*, 392 U.S. at 436).

To state a claim pursuant to 42 U.S.C. § 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). "[A]n essential element [of this] cause of action is a requirement that the alleged discrimination took place because of the individual's race." *Id.* at 1088.

The Court finds that Mr. King satisfies the first and third elements as he is African American and he alleges that the activities at issue involve his right to make and enforce a contract. The Court's analysis, therefore, focuses on the second element: the defendants' intent to discriminate based on race. For Mr. King's claim to survive the motions to dismiss, "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 296 (S.D.N.Y. 2011) (quoting *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999) (internal quotation marks omitted)). "Conclusory allegations of generalized racial bias do not establish discriminatory intent." *Flagg v. Control Data*, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992), *aff'd* 998 F.2d 1002 (3rd Cir. 1993), *cert denied*, 510 U.S. 1052 (1994). Moreover, "conclusory" allegations are "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

Upon review of the Complaint, the Court finds that Mr. King fails to plead sufficient facts supporting the assertion that any defendant was motivated by racial animus or intended to discriminate based on race. On this claim, while the Complaint lacks facts, it is replete with conclusory and factually unsupported allegations that defendants' conduct was "inspired by unlawful racial animus."[10] While Mr. King repeatedly labels defendants' actions as racially motivated, this is not enough to make a plausible civil rights claim.[11] Mr. King fails to make

---

[10] For example, the Complaint alleges that "[t]he actions of all Defendants who concurred in this activity were inspired by unlawful racial animus as a substantial motivating factor" and "[t]he Actions complained of in this Section were committed unfairly and with unlawful racial animus a substantial motivating factor." (ECF No. 73-1 at 6; ECF No. 73-2 at 2.)

[11] Mr. King cites to his prior dealings with Senator Ayotte when she served as Attorney General of New Hampshire (2004 – 2009) to support his allegations that she acted with racial animus in refusing him admission to the rallies in 2010. (ECF No. 73-3 at 1-2.) He also contends that John McCain "ejected" a black reporter from a campaign event in 2008. (ECF No. 73-1 at 6.) Such allegations, however, are insufficient to withstand a motion to dismiss.

adequate factual allegations that the motivating factor behind defendants' refusal to contract with him was his race.

Therefore, defendants' Motions to Dismiss Count II are GRANTED.

### C. Conspiracy To Interfere With Civil Rights Under 42 U.S.C. § 1985(3) (Count III)

Mr. King claims that defendants conspired to violate his First Amendment constitutional rights at the "Steak Out Rally" and the "GOP Rally" pursuant to 42 U.S.C. § 1985(3). Section 1985(3) prohibits "two or more persons in any State [from] conspir[ing to] . . . depriv[e] . . . any person or class or persons of the equal protection of the laws." The intent of § 1985(3) was "to address racial animus first and foremost." *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 108 (1st Cir. 2008). A claim under § 1985(3) "must allege that (i) the alleged conspirators possessed some racial, or perhaps otherwise class-based, invidiously discriminatory animus, and (ii) their alleged conspiracy was aimed at interfering with rights . . . protected against private, as well as official, encroachment." *Romero-Barcelo v. Hernandez-Agosoto*, 75 F.3d 23, 34 (1st Cir. 1996) (internal quotation marks and citations omitted).

The U.S. Supreme Court has given courts a clear directive when applying 42 U.S.C. § 1985(3) to cases invoking First Amendment rights. A "conspiracy to violate First Amendment rights is not made out without proof of state involvement." *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 832 (1983) (citing *Murphy v. Mount Carmel High Sch.*, 543 F.2d 1189, 1193 (7th Cir. 1976)). Section 1985(3) does not "prohibit[] wholly private conspiracies to abridge the right of association guaranteed by the First Amendment." *Id.* at 833. Because the Court previously found that the Political Defendants are not state actors, the § 1985 claims against the Political Defendants must be dismissed.

This claim suffers the same fate when applied to the Nashua Defendants. The Complaint does not set forth sufficient plausible, non-conclusory facts to support an allegation that the Nashua Defendants conspired to deprive Mr. King of his civil rights.[12] Vague, conclusory allegations of conspiratorial conduct are insufficient, even at the pleading stage, for the Court to find that the Complaint should be allowed to go forward on this ground. *See, e.g., Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir. 1980).

In light of the above, defendants' Motions to Dismiss Count III are GRANTED.

### D. Common Law Claims (Counts V, VI and VII)

In light of the Court's dismissal of Mr. King's federal claims, only his state law claims remain. Although "the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction," that power is exercised at the discretion of the court. *Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 564 (1st Cir. 1997) (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996)). The Court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c), (c)(3). However, because the federal claims raise issues similar to the state claims, the Court exercises its discretion to retain supplemental jurisdiction in the interest of judicial economy and in the interest of the litigants obtaining expeditious resolution of the claims. *See Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 265 n. 8 (D.R.I. 2009) (retaining supplemental jurisdiction after the dismissal of due process claims because the court was familiar with the facts). Thus, the Court will now review Mr. King's state law claims for assault, intentional infliction of emotional distress, and negligence.

---

[12] The allegations in the Complaint include statements such as "[t]he actions of all Defendants who concurred in this activity were inspired by unlawful racial animus as a substantial motivating factor" (ECF 73-1 at 6); and "by agreeing at each and every event to disturb him as much as possible and to deny access offered to other white reporters." (ECF No. 73-4 at 3.)

To plead an assault claim, Mr. King has to allege that "(1) the defendant . . . intended to cause harmful or offensive contact to the plaintiff, and (2) the plaintiff must have been put in imminent apprehension of such contact." *Yale v. Town of Allenstown*, 969 F. Supp. 798, 801 (D.N.H. 1997) (citing Restatement (Second) of Torts § 21(1)(1965)). Regarding his claim for intentional infliction of emotional distress, Mr. King must allege that defendants "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress to [him]." *Morancy v. Morancy*, 593 A.2d 1158, 1159 (N.H. 1991) (quoting Restatement (Second) of Torts § 46 (1965)). Finally, to plead a negligence claim, Mr. King must allege "a breach of a duty of care by the defendant, which proximately causes [his] injury." *Weldy v. Town of Kingston*, 514 A.2d 1257, 1260 (N.H. 1986).

In support of these common law claims, Mr. King alleges that the "Officers of the Political Defendants"[13] "approach[ed him] in a menacing and threatening manner, and put their hands on him as he tried to roll video." (ECF No. 73-4 at 4.) Mr. King also alleges that the "Defendants' repeated threats to arrest a reporter [Mr. King] in the prosecution of his duties," constitutes "conduct that shocks the conscience of any reasonable person or juror." *Id.* Finally, Mr. King alleges that all of the alleged acts were "committed out of Negligence and careless disregard for the law and Plaintiff's rights." *Id.*

The Court finds the allegations contained in the Complaint pertaining to Counts V, VI, and VII inadequate to support any of the common law causes of action.[14] For example, Count V for assault fails to specify who did what when, and what their intent was; Count VI for

---

[13] The Court assumes this refers to the individuals named as defendants who were employed by or volunteers of either the Nashua Republican City Committee (Di Lothrop and Dennis Hogan) or the New Hampshire Republican State Committee (Ryan Williams).

[14] As explained above, Mr. King has previously failed to cure the deficiencies in his complaints. The filing of his proposed Third Amended Complaint would have been futile. Moreover, any further amendment at this stage would cause undue prejudice to defendants.

intentional infliction of emotional distress fails to set forth who did what or the resultant harm; and Count VII for negligence is devoid of an assertion of the duty owed. Without sufficient factual allegations, the conclusory claims contained in the Complaint amount to nothing more than "the-defendant[s]-unlawfully-harmed-me" and therefore cannot withstand defendants' Motions to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Therefore, defendants' Motions to Dismiss Counts V, VI and VII are GRANTED

## V.  CONCLUSION

Defendants' Motions to Dismiss (ECF No. 78, 79, 80 and 83) are GRANTED. Plaintiff's Second Amended Complaint is DISMISSED as to all counts and all defendants, each party to bear its own costs.

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

May 14, 2012